HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

**Attorneys for Plaintiff**
LYMI Inc.

*Additional attorneys on signature page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LYMI Inc., <br><br> Plaintiff, <br><br> v. <br><br> Few Moda Inc., <br><br> Defendant. | Case No. 2:24-cv-4564-GW-RAO <br><br> **STIPULATED ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI)** |

Plaintiff LYMI Inc. ("Reformation" or "Plaintiff") and Defendant Few Moda Inc. ("Few Moda" or "Defendant"), by and through their undersigned counsel, submit this Stipulated Order for Discovery of Electronically Stored Information (ESI), pursuant to Fed. R. Civ. P. 26.

1. **Purpose.** This Stipulated Order for Discovery of Electronically Stored Information (the "Protocol") will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and

any other applicable orders and rules. This Protocol shall supersede any instructions in existing or future discovery requests, save for written stipulations by the parties. To the extent that instructions in existing or future discovery requests conflict with this Protocol, the Protocol shall govern.

2. **Search Methods/Terms.** The parties agree that, in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Notwithstanding prior discussion of or agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss application of further search restrictions (e.g., if a single search was for "card" and ninety percent of the resulting documents came from the irrelevant term "credit card," a negative limitation to ignore documents only returned as a result of "credit card" may be applied to remove these documents). The party receiving production shall not unreasonably oppose such further restrictions designed to filter immaterial search results.

3. **Review of Custodians and Search Methods/Terms.** The collection of data by custodians and search methods/terms is often an iterative process. Recognizing that the receiving party will not be able to assess the success of any proposed custodians and search terms until after production, the parties agree that within thirty (30) days of completed initial production being made pursuant to any agreed upon custodians and search terms, the receiving party may request that additional custodians and search terms be reviewed for further collection. The parties will meet and confer in good faith on the proposal for additional collections. Unless the proposal creates an undue burden, is disproportionate to the needs of the case or the needs for specific information, is being proposed for an inappropriate reason, will result in few unique documents not already or produced, or is for some

other reason improper or in bad faith, the producing party will run collections on the proposed custodians and search terms and evaluate the results. This process does not impact a producing party's rights or abilities to object to or seek a protective order limiting or eliminating the further searches.

4. **Production Format (ESI).** The parties agree to make all reasonable efforts to ensure that ESI should be provided in the following format:

   a. Information Held in Databases: The parties agree to meet and confer to determine the best manner by which to produce relevant, non-privileged information held in large databases. Production formats may include, but are not limited to, generating reports of relevant information using default reporting formats available from the database system, exporting data or data tables in a mutually usable delimited format or exchanging database files in a mutually useable format. Any proposed format must be reasonably useable and not require either party to acquire specialized software or convert the data to a more useable form.

   b. Native Files: The parties agree to produce Native Files of spreadsheet application files (*e.g.*, Microsoft Excel, Google Sheets), presentation application files (*e.g.*, Microsoft PowerPoint, Google Slides), audio/video files (*e.g.*, .wav, .mpeg, .avi), digital representations of multimedia or social media content files (*e.g.*, .mht, .warc), and any files related to designs or products at issues in this case. The parties shall meet and confer with respect to the form of production for multimedia, audio, and video files in non-standard formats or any files included in this sub-paragraph for which a claim of privilege exists.

   c. Converted Image Files: Except as otherwise stated in sections a. & b. above, ESI will be produced to the requesting party in TIFF format (Tagged Image File Format): Single-page, 300 DPI, CCITT Group 4, fax encoding, gray scale TIFFs except where producing multi-color ESI in black and white would result in rendering the contents of the ESI unreadable, in which case the ESI will be produced in JPEG (Joint Photographic Experts Group) format.

       d.       Inline Images: Images originally intended to be viewed inline, e.g. logos in email signatures, will be displayed inline in images. Images that are email attachments will be extracted as separate documents.

       e.       Embedded Links, Hyperlinks, and/or Modern Attachments: To the extent the software used to create documents or collect documents is able to maintain the familial relationship between emails (or similar "parent" style records) and embedded links, hyperlinks, and/or modern attachments, the documents will be produced with such familial information. Where the software used to create documents or collect documents is unable to maintain the familial relationship between emails (or similar "parent" style records) and embedded links, hyperlinks, and/or modern attachments, the producing party is not obligated to recreate and maintain the pairings. A requesting party can request that the familial relationships of emails (or similar "parent" style records) and embedded links, hyperlinks, and/or modern attachments be re-established upon a showing of a legitimate need and that such steps are proportional to the needs of the case. The cost of re-establishing the familial relationships may be shifted to the requesting party.

       f.       Exception Report: The producing party shall compile and retain an exception report enumerating any unprocessed or unprocessable documents, their file type and file location.

       g.       Unique IDs: Each image or file should have a unique file name, which is the Bates Number of the document. Bates Numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates Numbering should be sequential. If a Bates Number or set of Bates Numbers is skipped in a production, the producing party will so note.

       h.       Database Load Files/Cross-Reference Files: Documents produced shall be provided to the requesting party with: (a) Concordance delimited load file(s) for images, natives, text, and metadata database information. Documents shall be produced according to this ESI Protocol with the following folders: (a) a

database load file folder; (b) an image folder for TIFFs and JPEGs; (c) a text folder for extracted or OCR text and (d) a natives folder for spreadsheets, etc. produced in native format. Agreed upon metadata fields shall be produced in a .DAT load file. Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production.

      i. Text Files: Documents originating in electronic form shall include extracted text in a "Text" Folder. For each document, a text file should be provided along with the TIFF. The text files will not contain the redacted portions of the documents. To the extent a document contains human readable, but non extractible text, the document shall be rendered searchable using OCR technology to create the appropriate text file.

      j. Metadata Fields. Load files shall contain the metadata fields set forth in **Exhibit A**, which includes organizational metadata (i.e. Bates numbers, custodians, etc.) system metadata and embedded metadata. No party is required to create system or embedded metadata for ESI that does not contain metadata in the original.

      k. Stamps or Branding: The parties agree to produce images with a legible, unique Bates number electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the Static Image other than a confidentiality legend (where applicable), redactions (consistent with any protective order entered in this matter), hash signature of any Native Document, and the Bates number identified above. Confidentiality legends and hash signatures shall be "burned" onto the Static Image at a location that does not obliterate or obscure any information from the source Document.

   l. De-duplication: The producing party may globally de-duplicate documents or files, but must provide custodian or source information in an All Custodian or All Sources metadata field.

   m. Threading: The parties will not thread emails prior to production. Each point within a thread will be produced to avoid data loss that occurs when only producing the most inclusive messages.

   n. Passwords or Encryption: Whenever a producing party provides ESI in native format, if these files are password protected or encrypted, the producing party shall make its best efforts to obtain the password and list it in a "Password" or similar field in the load file.

   o. Additional terms: For documents produced in TIFF or JPEG formats, the producing party is not required to produce ESI in native format without prejudice to the requesting party's right to request the production of individual documents in native format upon a showing of good cause. The requesting party must make written request to the producing party for the production of individual documents in native format. The written request shall identify the individual documents by Bates number with an explanation of good cause as to each individual document. A party receiving a written request for production of a document in native format shall have 14 days after the request to object. If the producing party makes such an objection, the requesting party must meet and confer with the producing party to try to resolve the matter by agreement. If no agreement is reached, the requesting party may file a motion seeking an order requiring the producing party to produce the requested documents in native format. The requesting party shall be solely responsible for obtaining any software or hardware required to review electronic documents produced in discovery, including in native format. Documents produced natively shall be represented in the set of imaged documents by a TIFF slipsheet indicating the production identification number and confidentiality designation for the native file that is being produced.

5. **Production Format (Hard Copy Documents).** The parties agree to make all reasonable efforts to ensure that documents gathered from hard copy documents should be provided in the following format:

    a. Documents originating in paper (or any document without extracted text), shall be converted to PDFs and include multi-page OCR and placed in an "OCR" folder. Documents that contain redactions shall have OCR for the content that remains after the redactions are applied to the PDF. The text files will not contain the redacted portions of the documents.

    b. Unitizing of Documents. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors logically unitize documents correctly and will commit to address situations where there are improperly unitized documents.

    c. Objective Coding Fields. The following objective coding fields should be provided to the extent available or practicable: (a) beginning Bates number; (b) ending Bates number; (c) beginning attachment Bates number; (d) ending attachment Bates number; (e) number of pages; (f) custodian; and (g) confidentiality designation.

6. **Non-Party Productions.** Unless otherwise agreed among the parties, the party that issues a non-party subpoena (the "Subpoenaing Party") shall put forth its commercially-reasonable best efforts, unless agreed otherwise, for: (1) taking reasonable steps to negotiate that the non-party's productions are processed in accordance with the specifications in this Order; (2) engaging, as necessary, a vendor to process the non-party production in accordance with the specifications in this Order, including, without limitation, affixing unique prefixes and Bates Numbers to the non-party production and undertaking reasonable efforts to comply with the provisions of subsections 4 and 5, above; and (3) distributing non-party

productions within twenty-one (21) days of receiving the production (or as soon as practicable) to all parties' counsel. Where more than one party issues a subpoena to the same non-party, and a vendor's services are required to render the non-party's materials usable, the parties may meet and confer in advance and expend reasonable efforts to discuss sharing expenses associated with the vendor's services.

7. **Preservation.** The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a. At a party's request, the parties will meet and confer regarding the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager," (including centralized, non-custodial sources of ESI, such as databases, shared file servers, or collaboration sites, reasonably believed or known to have been used or accessed by such custodians). Following these meet and confer efforts, where agreement cannot be reached, either party may seek an order of the Court or similar official requiring preservation of the data upon a showing of good cause meeting the proportionality needs of the matter.

    b. Consistent with the proportionality standard set forth in Rule 26(b)(2)(B), the parties agree that the following categories of ESI are not reasonably accessible because of undue burden or cost, and ESI from these sources will be preserved but not searched, reviewed, or produced:

        i. ESI deleted in the normal course of business before the time a preservation obligations in this action came into effect;

        ii. On-line access data such as, without limitation, temporary internet files, history files, cache files, and cookies;

       iii.    Server, system, network, or software application logs;

       iv.    Data remaining from systems no longer in use that are unintelligible on the systems currently in use;

       v.    Structural files not material to individual file contents (e.g., .CCS, .XSL, .XML, .DTD, etc.).

8. **Inadvertent Production of Privileged or Otherwise Protected Material.** When a producing party gives notice to receiving parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

9. **Miscellaneous.**

    a.    Additional Parties. Any party named, served, and appearing in this action after the date of this Protocol shall be bound by its terms, effective once the Protocol has been served upon such party, unless the Court orders otherwise on good cause shown. Any party who causes another party to be added to this action after the entry of this Protocol shall serve that new party with a copy of this Protocol and any subsequent amendments to it at the time it serves its pleading and summons.

    b.    Costs. Nothing in this Protocol shall affect applicable law regarding a producing party's ability to shift costs of discovery in whole or in part to the requesting party, or otherwise affect any party's right to petition the Court for an order apportioning some or all of the costs of discovery.

      c.      Further Amendment. Except as otherwise provided in this Protocol, its terms may be amended only by written stipulation of the parties or by order of the Court, on noticed motion, for good cause shown.

      d.      This Protocol does not address, limit, or determine the relevance, discoverability, or admission into evidence of any documents. Nor do the parties waive any objections as to the production, discoverability, or confidentiality of documents subject to this Protocol. The parties will enter into a stipulated protective order to be entered by the Court, to facilitate the exchange of information and documents which may be subject to confidentiality limitations on disclosure due to federal laws, state laws, and privacy rights.

It is so stipulated, through counsel of record.

DATED: February 7, 2025          HANSON BRIDGETT LLP

By:     /s/ Justin Thiele
HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, 3rd Floor
Los Angeles, California 90071
Telephone:  (213) 395-7620

GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:  (415) 777-3200

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| 1 | DATED: February 7, 2025 | FRIEDLAND CIANFRANI LLP |

By:    /s/ Jonathan M. Sabin
Michael K. Friedland (SBN 157,217)
michael.friedland@fciplaw.com
David G. Kim (SBN 307821)
david.kim@fciplaw.com
FRIEDLAND CIANFRANI LLP
17901 Von Karman Ave., Ste. 925
Irvine, CA 92614

KANE KESSLER, P.C.
Adam M. Cohen (admitted *pro hac vice*)
Jonathan M. Sabin (admitted *pro hac vice*)
600 Third Avenue
New York, NY 10016
212-541-6222
acohen@kanekessler.com
jsabin@kanekessler.com

*Attorneys for Defendant*

1 | For good cause shown, it is so ordered.

2 | DATED: February 7, 2025

_____
Hon. Rozella A. Oliver
United States Magistrate Judge

# Exhibit A

## Metadata Fields for Production

Metadata, or document characteristics, field names and availability may vary depending on the application that generates them and the processing platform used to process the electronic documents. Accordingly, the chart below describes the Metadata fields in generic, commonly used terms that the producing party is to adapt to the specific types of ESI it is producing, to the extent such Metadata fields exist associated with the original electronic documents or are automatically generated as part of the electronic data discovery process.

| Field Name | Field Type | Field Description |
| --- | --- | --- |
| Begin Bates | Text | Displays page ID of first page in a document. |
| End Bates | Text | Page ID of last page in a document. |
| Begin Family | Text | BegDoc# of first attached document in family. |
| End Family | Text | EndDoc# of last attached document in family. |
| Parent Id | Text | Displays the Image value of the attachment record's parent. |
| Family | Text | Stores BegDoc# of parent record and EndDoc# of last attachment record, separated by a hyphen. Populated for all records in the family (parent and attachment(s)). |
| Num Pages | Numeric | Number of pages in a document (image records). |
| Subject | Paragraph | Subject of the e-mail message or subject field value extracted from metadata of native file |
| Custodian | Paragraph | Custodian who provided ESI or hard copy documents |
| All Custodians | Paragraph | Names of the custodians or sources containing duplicate versions of the original record. |

| Field Name | Field Type | Field Description |
| --- | --- | --- |
| Title | Paragraph | Title field value extracted from the metadata of the native file. |
| Author | Paragraph | Author value pulled from metadata of the native file. |
| To | Paragraph | Main recipient(s) of the e-mail message. |
| From | Paragraph | Author of the e-mail message. |
| CC | Paragraph | Recipient(s) of "Carbon Copies)" of the e-mail message. |
| BCC | Paragraph | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| Extension | Text | File extension of native file. |
| Date Created | Date/Time | Create date and time attribute of the native file |
| Date Sent | Date/Time | Sent date and time of an e-mail message. |
| Date Received | Date/Time | Received date and time of an e-mail message. |
| Date Modified | Date/Time | Modified date and time attribute for the native file. |
| Filename | Paragraph | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| File Path | Paragraph | Folder Language captured at scan time for hard copy docs (alt text: The folder path of the location of the document in its native environment.) |
| Message ID | Text | Associated with centrally managed enterprise email servers. Could be EntryID or UniqueID. Provide the equivalent value for other proprietary mailstore formats. |
| MD5 Hash | Text | Unique identifier, similar to a "fingerprint", extracted from all files imported. Uses 128-bit encryption. |
| SHA1 Hash | Text | Unique identifier, similar to a "fingerprint", extracted from all files. Uses 160-bit encryption. |
| Comments | Paragraph | Comments field value pulled from the metadata of the native file. |

| Field Name | Field Type | Field Description |
|---|---|---|
| Revision Number | Text | Revision number extracted from metadata of native file. |
| Confidentiality | Text | Indicated Confidentiality based on the Protective Order in place. (alt text: Identifies the confidentiality applied to the document in accordance with the Protective Order in place. The image version of the document is endorsed with the confidentiality. For native files, the file name includes the confidentiality) |
| Placeholder | Text | "Y" indicates that the file has a placeholder image and links to a Native File. |
| Redacted | Text | "Y" indicates that the file has been redacted and the Text was modified from its original version. |
| Track Changes | Text | "Y" indicates track changes is on. |
| NativePath | Paragraph | Native file path/link |
| Text Path | Paragraph | Text file path/link |

**Multiple Signature Attestation**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the content of this stipulation and have authorized the filing of this stipulation.

DATED: February 7, 2025                HANSON BRIDGETT LLP


                                       By:     /s/ Justin Thiele
                                           RAFFI V. ZEROUNIAN
                                           GARNER K. WENG
                                           JUSTIN P. THIELE
                                           Attorneys for Plaintiff LYMI Inc.